ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| JUNTA DE PLANIFICACIÓN DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>JULIO PAMÍAS PORTALATÍN, JUAN M. VÁZQUEZ MUÑIZ, SALUS JOBBE, LLC.<br><br>Parte Peticionaria | KLCE202301460 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Municipal de Hatillo<br><br>Caso Núm.: HA2023CV00056<br><br>Sobre: Cobro de Dinero (Regla 60) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de enero de 2024.

Compareció ante este Tribunal la parte peticionaria, Juan M. Vázquez Muñoz (en adelante, "Vázquez" o "Peticionario"), mediante solicitud de *certiorari* presentada el 27 de diciembre de 2023. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Municipal de Hatillo (en adelante, "TPI"), el 3 de noviembre de 2023, notificada y archivada en autos el 10 del mismo mes y año. Dicha determinación fue objeto de una moción de reconsideración que fue declarada "No Ha Lugar" mediante *Orden* notificada el 8 de diciembre de 2023.

Por los fundamentos que expondremos a continuación, se *expide* y se *revoca* la *Resolución* recurrida.

**I.**

El caso de epígrafe tuvo su génesis con la "**Demanda**" presentada por la Junta de Planificación de Puerto Rico (en adelante, "Junta" o "Recurrida") sobre cobro de dinero, al amparo del procedimiento sumario dispuesto en la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60, en contra del Peticionario y los codemandados, Julio Pamias Portalatín y Salus

Jobbe, LLC. Mediante la misma, la Junta alegó que los hechos que originaron la presentación de la "**Demanda**" se remontan a la presentación de la *Querella* núm. 20202-SRQ-009992 el 4 de mayo de 2022, en contra del Peticionario y el restante de los codemandados (en adelante, "Querella").

Sostuvo que durante el trámite administrativo celebrado se determinó lo siguiente:

(1) Que tanto el Peticionario como los codemandados eran dueños, oficiales, sirvientes, empleados, cesionarios o causahabientes del negocio "Monarca CBD Store", ubicado en el Municipio de Hatillo;

(2) Que en la *Querella* se alegó que a dicho establecimiento se le expidió un Permiso Único Automático incorrectamente por un ingeniero autorizado a emitir este tipo de permisos, toda vez que la descripción del proponente fue: "Venta Fuente de Soda de teses, cafés, aperitivos y otros y Venta al Detal de Productos CBD". No obstante, dichos permisos no podían ser utilizados para, entre otras cosas, cualquier uso que implicara elaboración y manejo de alimentos o cualquier uso relacionado con venta, cultivo, producción o distribución de cannabis, de conformidad con las disposiciones del "Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios de la Junta de Planificación de 2020", Reglamento Núm. 9233 de 9 de diciembre de 2020 (en adelante, "Reglamento Conjunto");

(3) Que el 20 de mayo de 2022, personal de la Junta realizó una investigación del negocio;

(4) Que durante la inspección se pudo observar un local comercial construido en cemento armado y bloques de hormigón con cristales en la parte frontal, con medidas aproximadas de 20.6 pies de largo por 57 pies de ancho y 10 pies de alto. Asimismo, que en dicho establecimiento se llevaban a cabo ventas de café, aperitivos, "alimentos fríos" y venta al detal de productos de CBD;

(5) Que, como parte del trámite administrativo, personal de la Junta verificó los sistemas de la Oficina de Gerencia de Permisos (en adelante,

"OGPe") y confirmó la existencia del Permiso Único Automático número 2021-398784-PUA-005371, el cual no se podía utilizar para actividades que implicaran la elaboración y el manejo de alimentos o cualquier uso relacionado con venta, cultivo, producción o distribución de cannabis.

Así, arguyó la Junta que luego de celebrado el trámite investigativo correspondiente a la *Querella*, se le notificó al Peticionario y al restante de los codemandados una *Notificación de Hallazgos y Orden de Mostrar Causa* (en adelante, "Notificación de Hallazgos") conteniendo las determinaciones de hechos y conclusiones de derecho alcanzadas a las siguientes direcciones postales: PO Box 142151, Arecibo, PR, 00614; PO Box 207, San Germán, PR 00683 y PO Box 1571, Lares, PR 00669. Sostuvo la Recurrida que mediante dicha *Notificación de Hallazgos* se le advirtió a la parte demandada que, en un término de veinte (20) días, tenía que mostrar causa por la cual no se les debía imponer una multa de $1,000.00 por las violaciones señaladas y les advirtió que, de no mostrar causa, la multa quedaría impuesta y se procedería a acudir al Tribunal de Primera Instancia, Sala Superior, a solicitar una orden judicial para ordenar la paralización de la actividad comercial y el cobro de la multa. Asimismo, se consignó en la "**Demanda**" que se presentó una solicitud de reconsideración ante la Junta, la cual fue denegada por dicha entidad gubernamental.

Amparada en lo anterior, la Junta le solicitó al TPI que se condenara al Peticionario y a los codemandados al pago de $1,000.00 de la multa impuesta, así como los intereses al porciento legal prevaleciente y las costas, gastos y honorarios de abogado en una cuantía no menor de $2,500.00. Así el trámite, la vista en su fondo quedó señalada para el 10 de mayo de 2023. No obstante, dos (2) días antes del juicio, el Peticionario presentó "**Solicitud de Desestimación**".

Asimismo, expuso que la "**Demanda**" no cumplía con los requisitos necesarios para que procediera una reclamación de cobro de dinero, al amparo de la Regla 60 de Procedimiento Civil, *supra*, pues la deuda no era líquida ni exigible, hubo insuficiencia en el emplazamiento, no se agotaron remedios administrativos y la Junta no tenía una reclamación que justificara

la concesión de un remedio. En lo concerniente a la presunta falta de jurisdicción sobre la persona, Vázquez sostuvo que fue emplazado personalmente el 12 de abril de 2023, o sea, 42 días después de haberse presentado la "**Demanda**" y en una dirección postal distinta a la que le pertenecía. A la luz de lo anterior, indicó que no fue notificado adecuadamente del proceso, así como de ninguna de las determinaciones tomadas en el trámite administrativo.

Adicionalmente, planteó que no era dueño, oficial, agente, sirviente, empleado, cesionario o causa habitante del negocio objeto de la *Querella* y tampoco controlaba las operaciones que se realizan en éste. Asimismo, expuso que la responsabilidad sobre las operaciones de una actividad de negocios recae sobre el dueño u operador al cual se le otorgaba un permiso y no de la agencia administrativa o profesional que evalúa una solicitud de permiso. Sobre este particular, abundó que su participación en el proceso de permisología se circunscribió a las disposiciones de la Ley Núm. 161-2009, según enmendada, conocida como la "Ley para la Reforma del Proceso de Permisos de Puerto Rico", y del Reglamento Conjunto sobre la evaluación de los documentos de los dueños, con el objetivo de tramitar una solicitud de Permiso Único para ser autorizados por la OGPe. Así pues, argumentó que no existía responsabilidad u obligación alguna para con la Junta.

Por otro lado, añadió que el Permiso en controversia fue expedido en armonía y de conformidad con el estado de derecho aplicable y para los usos dispuestos en ley. Además, arguyó que el mismo gozaba de una presunción de corrección que en ausencia de fraude, dolo, engaño, extorsión, soborno o la comisión de algún delito no procedía la causa de acción incoada por la Recurrida. De igual modo, expresó que si en las inspecciones realizadas se identificaran usos o actividades que se están llevando a cabo sin estar autorizadas en el Permiso Único, pero las mismas son legítimas en el distrito de calificación, en términos de uso y parámetros de construcción, se permitirá enmendar el mismo para añadir la autorización a la actividad o uso, siempre y cuando se paguen los cargos y derechos

aplicables al año anterior a la renovación como penalidad por llevar a cabo una actividad no incluida en el Permiso Único.

Añadió que la orden emitida por la Junta para mostrar causa, además de ser incompatible con el procedimiento establecido por ley y reglamento, constituía una orden sujeta a sanciones por su incumplimiento, al amparo de la Sección 3.21 de la Ley Núm. 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 LPRA sec. 217 (a), y no como una adjudicación final de la agencia administrativa o expedición de una multa administrativa que ponga final al trámite administrativo. Además, manifestó que la Junta debió inicialmente cumplir con el procedimiento de auditoría contemplado en el Capítulo 11.3 del Reglamento Conjunto para garantizarle el debido proceso de ley al Peticionario, notificar adecuadamente y esperar a que se agotaran todos los remedios administrativos con una determinación final y firme para poder solicitar la intervención judicial. En vista de ello, expuso que resultaba imperativo concluir que la Recurrida debía agotar el remedio administrativo iniciado mediante el mecanismo ordinario de *Querella* y su reclamación procedía presentarla ante la Oficina de Auditoría de la Junta, pues esta última era la división facultada para fiscalizar el cumplimiento de los profesionales con las disposiciones legales relacionadas con permisos, licencias o certificaciones expedidas al amparo de la Ley Núm. 161-2009, *supra*, y cualquier otra ley o reglamento aplicable.

Llegado el día del señalamiento del juicio, comparecieron todas las partes, excepto el codemandado Julio Pamias Portalatín. Sobre este respecto, la Junta expuso que no se pudo emplazar a este último. Igualmente, peticionó que se le concediera un plazo de veinte (20) días para poder replicar a la "**Solicitud de Desestimación**" presentada por Vázquez. Fue a base de ello que solicitó un nuevo señalamiento de vista en su fondo. Escuchadas las argumentaciones de las partes, el TPI ordenó la expedición de un nuevo proyecto de notificación-citación dirigido al codemandado Julio Pamias Portalatín, se remitiera al Peticionario la "**Demanda**" a la siguiente

dirección postal: HC-01 Box 7280, Hatillo PR 00659 y reseñaló el juicio para el 16 de agosto de 2023.

El 30 de mayo de 2023, la Junta presentó "**Moción en Oposición a Solicitud de Desestimación**". Expuso que la causa de acción iniciada surgía como consecuencia directa de la autorización incorrecta de un permiso de uso expedido por Vázquez, como ingeniero autorizado por la Junta para expedir este tipo de permisos. Además, adujo que la Recurrida le notificó al Peticionario las infracciones a la Ley Núm. 161-2009, *supra*, y al Reglamento Conjunto incurridas por su negligencia y le informó sobre la multa impuesta por las violaciones señaladas. En específico, sostuvo que se señalaron violaciones al Artículo 9.12 de la Ley Núm. 161-2009, *supra*, y a la Sección 3.7.1.9 del Reglamento Conjunto. Por tanto, fue su contención que se estaba ante una deuda vencida, líquida y exigible, conforme la Regla 60 de Procedimiento Civil, *supra*.

Llegado el día del segundo señalamiento de juicio, el codemandado Julio Pamia Portalatín expuso que el TPI carecía de jurisdicción, pues durante el proceso administrativo se presentó una solicitud de reconsideración y nunca se recibió notificación de la agencia tomando una determinación sobre los méritos de ésta. En dicho señalamiento, la Junta expresó que el ordenamiento jurídico permitía que las agencias puedan rechazar de plano o no actuar sobre mociones de reconsideración que se presenten dentro de un proceso administrativo. Dado a lo anterior, el foro *a quo* le concedió a la Recurrida un término de veinte (20) días para que sometiera una memorando de derecho en el que se estableciera y se justificara la finalidad del proceso administrativo.

El 5 de septiembre de 2023, la Junta presentó "**Moción en Cumplimiento de Orden**". Argumentó que la solicitud de reconsideración presentada ante la agencia se fundamentó en que después de la inspección realizada por la Recurrida se había obtenido el permiso correspondiente a su actividad comercial, por lo que se demostró que desde que el establecimiento comenzó operaciones hasta que se efectuó la inspección por parte de la Junta, dicho local operó sin el permiso relacionado con su

actividad de negocio. De igual manera, expresó que la Sección 3.15 de la LPAU le confiere la potestad a la Junta a rechazar de plano cualquier moción de reconsideración que se le presente, sin que la falta de notificación de la decisión implícita de la agencia afecte el derecho de los promoventes a acudir ante el Tribunal de Apelaciones para solicitar revisión judicial. Por tanto, expresó que ni el Peticionario ni el restante de los codemandados necesitaban una notificación de la Junta para enterarse que su solicitud de reconsideración había sido rechazada de plano, pues la Sección 3.15 de la LPAU es clara en cuanto al término que tiene el promovente para solicitar revisión judicial si la agencia no actúa dentro de los quince (15) días siguientes a la presentación de su solicitud de reconsideración.

De conformidad con lo anterior, la Recurrida sostuvo que la inacción del Peticionario y del restante de los codemandados ante el rechazo de plano de su solicitud de reconsideración, tuvo el efecto de convertir la *Notificación de Hallazgos* en final y firme y no debía tomarse como excusa para privar a la Junta a ejercer su deber ante el incumplimiento con el Reglamento Conjunto. El 15 de septiembre de 2023, Vázquez presentó "**Escrito en Cumplimiento de Orden y Réplica en Oposición a Moción presentada por la Junta de Planificación**". Mediante el mismo, el Peticionario elaboró los planteamientos que presentó en su solicitud de desestimación y expuso que el rechazo de plano por parte de la Junta sin que la *Notificación de Hallazgos y Orden de Mostrar Causa* tuviera las advertencias correspondientes, no surte efecto jurídico alguno y, por tanto, no se había activado el derecho de la Junta de recurrir ante el TPI para reclamar la multa impuesta.

Adicionalmente, expresó que, ante la falta de culminación de un proceso de auditoría en su contra, la Junta estaba impedida de recurrir ante el TPI para reclamar la deuda en su contra, pues su intervención en la obtención del permiso de uso en controversia se rige por disposiciones reglamentarias distintas. El 3 de noviembre de 2023, el TPI emitió *Resolución* mediante la cual declaró "No Ha Lugar" la solicitud de desestimación de Vázquez y concluyó que la Regla 60 de Procedimiento

Civil, *supra*, no permitía pasar juicio ni relitigar asuntos inherentes al procedimiento administrativo mediante el cual se impuso la multa cuyo pago se reclamaba en el caso.

Inconforme, el Peticionario presentó "**Moción de Reconsideración**". Luego de la presentación de la oposición por parte de la Recurrida, el foro de instancia denegó la solicitud de reconsideración. Aún insatisfecho, Vázquez presentó el recurso de *certiorari* que nos ocupa y le imputó al foro *a quo* la comisión de los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia al no declararse sin jurisdicción por no haberse agotado el remedio administrativo disponible al peticionario, notificaciones defectuosas, dejar de exponer una reclamación que justifique la concesión de un remedio, ausencia total de una multa impuesta, incumplimiento con requisitos procesales y sustantivos de la Regla 60.

> Erró el Tribunal de Primera Instancia al concluir que existe una deuda líquida, vencida y exigible en total ausencia de prueba alguna que respalde tal afirmación y sin evaluarse en sus méritos el caso manifestando patente prejuicio, parcialidad y error craso en contra de los co-demandados.

El 22 de enero de 2024, la Junta presentó "**Memorando de la Parte Recurrida en Oposición a Solicitud de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La Sección 4.6 de la Ley Núm. 38-2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (en adelante, la "LPAU"), establece –en su parte pertinente– lo siguiente:

> El Tribunal de Apelaciones revisará como cuestión de derecho las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676.

> Asimismo, la Sección 4.2 del precitado estatuto expone que:

> Una parte adversamente afectada por una **orden o resolución final** de una agencia y **que haya agotado todos los remedios provistos por la agencia** o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden

o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. 3 LPRA sec. 9672 (énfasis suplido).

Así, la LPAU establece un procedimiento uniforme para la revisión judicial de órdenes y resoluciones dictadas por las agencias administrativas de Puerto Rico. Por virtud de dicha ley, una parte que haya sido afectada adversamente por una **orden o resolución final** de una agencia y que haya agotado todos los remedios administrativos disponibles, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones. Comisionado de Seguros v. Universal, 167 DPR 21, 28 (2006).

La Sección 1.3 de la LPAU dispone que una orden o resolución "significa cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas, excluyendo órdenes ejecutivas emitidas por el Gobernador". 3 LPRA sec. 9603(g). De igual forma, dicho estatuto especifica que una orden o resolución **parcial** constituye aquella "acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma". 3 LPRA sec. 9603(h). Asimismo, define **orden interlocutoria** como aquella "acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". 3 LPRA sec. 9603(i).

Con la intención de evitar una intromisión indebida y a destiempo en el trámite administrativo por parte de los tribunales, la Asamblea Legislativa circunscribió la revisión judicial exclusivamente a los dictámenes **finales** de las agencias. "**Al así hacerlo, se aseguró que la intervención judicial se realizara después de que concluyeran los trámites administrativos y se adjudicaran todas las controversias pendientes ante la agencia**". Comisionado de Seguros v. Universal, *supra,* págs. 28-29 (énfasis suplido).

Nuestro máximo foro judicial ha definido una orden o resolución **final** de una agencia administrativa como aquella que dispone del caso ante la

agencia y tiene efectos adjudicativos y dispositivos sobre las partes. "Se trata de la resolución que culmina en *forma final* el procedimiento administrativo respecto a todas las controversias. Ello, a su vez, hace ejecutable entre las partes la decisión administrativa y, por ende, susceptible de revisión judicial". Íd., págs. 29-30 (énfasis en el original).

Respecto a una orden o resolución **interlocutoria**, la Sección 4.2 de la LPAU reza lo siguiente:

> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. 3 LPRA sec. 9672.

**B.**

La Ley Núm. 161-2009, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9011 *et seq.*, creó la OGPe, adscrita a la Junta de Planificación de Puerto Rico. 23 LPRA sec. 9012. Este estatuto le transfirió a la OGPe las funciones de la Administración de Reglamentos y Permisos y, por ende, le concedió jurisdicción para emitir permisos, recomendaciones, licencias o certificaciones relacionadas al desarrollo y el uso de terrenos en Puerto Rico. 23 LPRA sec. 9012s y sec. 9018. Así pues, dicho estatuto estableció un esquema de evaluación y aprobación de permisos de construcción. A estos efectos, toda resolución aprobando un permiso de construcción puede ser objeto de revisión ante un ente administrativo.

La Ley Núm. 161-2009 también confiere a los tribunales de primera instancia, a manera de excepción, la facultad para resolver acciones que cuestionan permisos finales expedidos por la agencia. En dichos casos, dicha pieza legislativa expresamente obliga al tribunal a "presum[ir] la corrección y la legalidad de las determinaciones finales y permisos expedidos". No obstante, la ley le reconoce al tribunal de primera instancia la facultad de revocar un permiso de construcción o la determinación final de la agencia siempre que medien ciertas circunstancias.

Los Artículos 14.6 y 14.7 de la Ley Núm. 161-2009, *supra*, le reconocen a la Junta de Planificación la potestad de atender e investigar aquellas querellas presentadas por cualquier agencia o dependencia del Gobierno de Puerto Rico o por una persona privada, natural o jurídica, que posea algún interés propietario o sea colindante, propietario u ocupante de una propiedad vecina, cuyo interés personal podría verse afectado.  23 LPRA secs. 9024e y 9024f. Dichas querellas pueden estar fundamentadas en las siguientes circunstancias: (1) incumplimiento con las disposiciones o condiciones de los permisos expedidos; (2) la ausencia de un permiso o (c) el incumplimiento con cualquier disposición de la Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como la Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 LPRA sec. 62 *et seq.*; la Ley Núm. 161-2009, según enmendada, las leyes habilitadoras de las Entidades Gubernamentales Concernidas, según definidas en la Ley Núm. 161-2009, *supra*; la Ley Núm. 107-2020, según enmendada, conocida como el "Código Municipal de Puerto Rico, 21 LPRA secs. 7001 *et seq.*; o de cualquier reglamento aplicable. 23 LPRA sec. 9024e.

Así pues, la Junta de Planificación quedó facultada para expedir órdenes de cese y desista o de paralización inmediata y/o de mostrar causa para lograr los propósitos de los antedichos estatutos. 23 LPRA sec. 9024d (f) y (g). A la luz de los poderes conferidos en la Ley Núm. 161-2009, según enmendada, la Junta de Planificación aprobó el "Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios de la Junta de Planificación de 2020", Reglamento Núm. 9233 de 9 de diciembre de 2020 (en adelante, "Reglamento Conjunto"). En lo aquí pertinente, la Regla 11.2.3 del Reglamento Conjunto 2020 instrumenta el procedimiento de investigación que deberá conducir la Junta de Planificación, un Municipio Autónomo con Jerarquía de I a la III o cualquier Entidad Gubernamental Concernida, según corresponda. Como parte de dicho proceso, el personal designado de la Junta de Planificación deberá efectuar una inspección y rendir un Informe de Investigación que contendrá toda la información técnica pertinente a los

hallazgos. *Véase*, Sección 11.2.3.3 de la Regla 11.2.3, Reglamento Conjunto 2020, *supra*. Dicho Informe de Investigación será referido por el personal designado por la Junta de Planificación para realizar las inspecciones al Oficial Auditor de Permisos, o cualquier otro representante designado por la Junta, para que, en los casos que proceda, esta última emita una *Notificación de Hallazgos y Orden de Mostrar Causa* y proceda conforme a las facultades reconocidas en la Ley Núm. 75- 1975, *supra*, y la Ley Núm. 161-2009, *supra*. Íd.

Pertinente a la controversia que nos ocupa, el Reglamento Conjunto 2020 dispone taxativamente que "[l]a Notificación de Hallazgos y Orden de Mostrar Causa constituirá una **determinación interlocutoria** de la [Junta de Planificación]". *Véase*, Sección 11.2.3.4 (c) de la Regla 11.2.3, Reglamento Conjunto 2020, *supra*, (énfasis suplido). Así, una vez se culmina el proceso de investigación y de la Notificación de Hallazgos y Orden de Mostrar Causa, **la Junta de Planificación debe emitir una determinación final en la que adjudicará las controversias identificadas en dicha notificación**. A esos efectos, la Sección 11.2.3.4 (d) de la Regla 11.2.3 del aludido Reglamento establece lo siguiente: **"[c]ulminados los procesos de investigación y de Notificación de Hallazgos y Orden de Mostrar Causa, la JP emitirá una determinación final en la que adjudicará las controversias identificadas en dicha notificación**". Íd. (d) (énfasis suplido).[1]

**III.**

Atendemos, en primer orden, el planteamiento jurisdiccional presentado por el Peticionario. Específicamente, Vázquez plantea que el TPI carece de jurisdicción para entender en los méritos de la acción en cobro de dinero presentada por la Junta, puesto que no se ha agotado todo el trámite administrativo, conforme lo dispone el Reglamento Conjunto 2020. Por su parte, la Junta la *Notificación de Hallazgo y Orden de Mostrar Causa*

---

[1] Es menester destacar que, en similares términos, se expresa el Reglamento Conjunto 2020 sobre el proceso de auditorías de determinaciones finales que la Junta de Planificación conduce cuando, entre otras circunstancias, se investiga una querella sobre certificaciones y permisos expedidos por la OGPe, así como de determinaciones finales emitidas por las entidades facultadas por la Ley Núm. 161-2009, *supra*.

constituye una determinación final de la agencia y que la misma fue notificada adecuadamente. No nos convence la postura de la Recurrida. Veamos.

Según hemos adelantado en el acápite anterior, la revisión judicial de las determinaciones administrativas de las agencias está limitada a aquellos pronunciamientos que sean finales. Es decir, cuando **adjudiquen todas las controversias pendientes ante la agencia y se culmine o agote todo el trámite administrativo**.

El propio Reglamento Conjunto 2020 cataloga la *Notificación de Hallazgos y Orden de Mostrar Causa* como **una determinación interlocutoria**. *Véase*, Sección 11.2.3.4 (c) de la Regla 11.2.3, Reglamento Conjunto 2020, *supra*. Entiéndase, por disposición del cuerpo reglamentario que utilizó la Junta para iniciar el proceso administrativo en contra del Peticionario, se reconoce taxativamente que este tipo de determinación **no pone fin al trámite administrativo de adjudicación de una querella ante la Junta de Planificación**. Así pues, la *Notificación de Hallazgos y Orden de Mostrar Causa* en controversia constituye una acción de la Junta en un procedimiento adjudicativo que dispone de un asunto meramente procesal. *Véase*, 3 LPRA sec. 9603(i).

**Tan es así que el propio Reglamento Conjunto 2020 establece que una vez termina el proceso investigativo de la querella y se efectúa la *Notificación de Hallazgos y Orden de Mostrar Causa*, la Junta está en la obligación de emitir una determinación final en la que adjudique las controversias identificadas en dicha Notificación**. *Véase*, Sección 11.2.3.4 (d) de la Regla 11.2.3, Reglamento Conjunto 2020, *supra*. De hecho, en la propia *Notificación de Hallazgos y Orden de Mostrar Causa* que obra en los autos del caso y que es eje de la controversia jurisdiccional, se establece taxativamente los siguiente: **"[e]sta notificación se considerará como una de naturaleza interlocutoria"**.[2]

---

[2] *Véase*, Apéndice del recurso de *certiorari*, pág. 13 (énfasis suplido).

Por tanto, coincidimos con Vázquez a los efectos de que la *Notificación de Hallazgos y Orden de Mostrar Causa* en el presente caso no constituye una determinación final que puso fin al proceso investigativo de la *Querella* núm. 20202-SRQ-009992. No sólo el Reglamento Conjunto así lo establece, sino que la propia *Notificación de Hallazgos y Orden de Mostrar Causa* en controversia también lo reconoce. Hágase hincapié al hecho de que tanto el Reglamento Conjunto como la *Notificación de Hallazgos* son documentos adoptados por la propia Junta. Así pues, no puede la Recurrida argumentar ante este Tribunal que, por un lado, la *Notificación de Hallazgos* constituye una determinación final de la agencia y, por el otro, efectuar un reconocimiento expreso de que es una determinación interlocutoria. Más aún cuando el Reglamento Conjunto requiere un paso adicional para imprimirle finalidad al proceso administrativo de una querella atendida por la Junta.

No siendo final el proceso administrativo iniciado con la *Querella* de autos, la Junta estaba impedida de recurrir ante el TPI para reclamar el pago de la multa de $1,000.00 descrita en la *Notificación de Hallazgos y Orden de Mostrar Causa*. Nótese que, al amparo de esta última, la Recurrida fundamentó la "**Demanda**" de cobro de dinero en contra del Peticionario y del resto de los codemandados. En fin, somos de la opinión de que la Junta recurrió ante el foro primario prematuramente a recobrar una multa que no es final y firme. Correspondía que la Recurrida culminara el trámite administrativo una vez expidió la *Notificación de Hallazgos y Orden de Mostrar Causa*, conforme lo requiere la Sección 11.2.3.4 (d) de la Regla 11.2.3 del Reglamento Conjunto 2020.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente Sentencia, *expedimos* y *revocamos* la *Resolución* recurrida. Consecuentemente, *desestimamos* la "**Demanda**" sobre cobro de dinero presentada por la Junta de Planificación en el caso de epígrafe, por entender que la misma es prematura, ya que la *Notificación de Hallazgos y Orden de Mostrar Causa* no constituye un dictamen final de la agencia que

pudiera activar la jurisdicción del TPI para adjudicar los méritos de las reclamaciones incoadas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.



Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones